Case 6:23-cv-00050-NKM-CKM   Document 1   Filed 08/30/23   Page 1 of 11
                                 Pageid#: 1

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/30/2023
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **RYOUGA KASPER**, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. **6:23CV00050** |
| ) | |
| **YAMADA JAPANESE RESTAURANTS LLC**, ) | **JURY TRIAL DEMANDED** |
| ) | |
| <u>SERVE</u>: R/A: Republic Registered Agent LLC ) | |
| 2807 N Parham Rd Ste 320 ) | |
| Henrico, VA, 23294-4410 ) | |
| ) | |
| *Defendant*. ) | |

## COMPLAINT

Ryouga Kasper ("Mr. Kasper" or "Plaintiff"), by and through undersigned counsel, brings this action against Defendant Yamada Japanese Restaurants LLC ("Yamada" or "Defendant") under the Fair Labor Standards Act, 29 U.S.C. § 203 et seq. ("FLSA"), the Virginia Minimum Wage Act, Va. Code Ann. § 40.1-28.8 et seq. ("VMWA"), Virginia's whistleblower statute, Va. Code Ann. § 40.1-27.3, and the common law of Virginia.

**I.     INTRODUCTION**

1.     This case involves violations of the FLSA, the VMWA, Va. Code Ann. § 40.1-27.3, and Virginia common law. Plaintiff has evidence that Defendant, through its authorized agents: (1) required Plaintiff to attend a mandatory meeting; (2) refused to compensate Plaintiff for the time spent at this meeting; and (3) terminated Plaintiff because he repeatedly complained about the violation. While the <u>amount</u> of unpaid wages is relatively small, the principle Plaintiff seeks to vindicate is not. Plaintiff was terminated by an employer who <u>expressly refused</u> to follow the law and terminated Plaintiff when he insisted Defendant pay him and other employees.

## II. JURISDICTION AND VENUE

2. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 et seq., the Virginia Minimum Wage Act ("VMWA"), Va. Code Ann. § 40.1-28.8 et seq., Virginia's whistleblower statute: Va. Code Ann. § 40.1-27.3, and Virginia common law.

3. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4. This Court has supplemental subject matter jurisdiction over the claims arising under Virginia state law because they are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C.§ 1367(a).

5. Venue lies in the Western District of Virginia, Lynchburg Division, under 28 U.S.C. § 1391(b) & (c) because Yamada Japanese Restaurants LLC resides here and a substantial part of the events or omissions giving rise to the claim occurred here.

## III. PARTIES

6. Plaintiff, Ryouga Kasper, is an adult citizen of the United States of America and resident of the Commonwealth of Virginia.

7. Defendant employed Plaintiff as a server from March 24, 2023, to May 31, 2023.

8. Yamada Japanese Restaurants LLC ("Yamada") is a Virginia limited liability company with its principal place of business located at 205 Gristmill Drive, Forest, VA 24551, and its principal office address registered at 21430 Timberlake Road, Lynchburg, VA 24502.

9. Koki Yamada ("Mr. Koki") is the owner of Yamada Japanese Restaurants LLC.

## IV. LEGAL FRAMEWORK

### A. The Fair Labor Standards Act

10. The Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 203 et seq., establishes minimum wage, overtime pay, record keeping, and employment standards for employees in the private sector and in federal, state, and local government.

11. The FLSA also prohibits employers from retaliating against employees for complaining about their employer's failure to comply with the FLSA.

12. Under the FLSA, making oral complaints about FLSA violations to the employer or its agents constitutes protected activity that protects an employee from retaliation. Minor v. Bostwick Labs., Inc., 669 F.3d 428, 432 (4th Cir. 2012).

13. Employees earning less than $35,568 per year ($684/week) are covered under the FLSA. 29 CFR § 541.300.

14. Under the FLSA, covered employees such as Mr. Kasper must receive compensation for attending mandatory meetings.

15. A meeting is mandatory if the employee is led to believe his present working conditions or the continuance of his employment would be adversely affected by nonattendance. 29 CFR § 785. 28.

16. Under § 216(b) of the FLSA, "Any employer who violates the provisions of ... section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages ... and in an additional equal amount as liquidated damages" in addition to attorney fees and costs.

**B. The Virginia Minimum Wage Act ("VMWA"), Va. Code Ann. § 40.1-28.8 et seq.**

17. Under Va. Code Ann. § 40.1-28.10, employers must pay their employees a minimum hourly rate for each hour worked.

18. Between January 1, 2023, until January 1, 2025, that hourly rate is the greater of $12/hr. or the federal minimum wage.

19. Under Va. Code Ann. § 40.1-28.12, employers who violate Va. Code Ann. § 40.1-28.10 are liable to their employees for unpaid wages, plus 8% interest from the date the unpaid wages should have been paid. The Court may also award reasonable attorney fees and costs, at its discretion.

**C. Virginia's Whistleblower Statute, Va. Code § 40.1-27.3**

20. Under Va. Code § 40.1-27.3, "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee: [o]r a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor …."

21. Under Va. Code § 40.1-27.3(C), "A person who alleges a violation of this section may bring a civil action in a court of competent jurisdiction within one year of the employer's prohibited retaliatory action. The court may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs.

D. **Bowman Claim under Virginia Common Law**

22. In Virginia, the at-will employment doctrine is not absolute. One exception is the "public policy exception," commonly referred to as a "Bowman claim."

23. An at-will employee asserting a wrongful discharge claim must identify a Virginia statute establishing a public policy that was violated by the employer.

24. The statute must state a public policy of Virginia and the discharged employee must show that he or she is within the class of persons the statute is designed to protect.

25. Under Bowman v. State Bank of Keysville, 229 Va. 534 (1985), an employee is entitled to compensatory and punitive damages when his employer retaliates against him for internally reporting violation of state wage laws. Frank v. True Color Painters, LLC, 108 Va. Cir. 490 (Fairfax County Oct. 4, 2021).

V. **STATEMENT OF FACTS**

26. Plaintiff, Mr. Kasper, was employed by Yamada from March 24, 2023, to May 31, 2023.

27. Mr. Kasper is a senior at Liberty University and worked for Defendant to help pay for his expenses while in school.

28. Mr. Kasper is of Japanese descent and was excited to learn how Japanese restaurants operate.

29. Mr. Kasper earned a base rate of $15 per hour, plus tips, which, when combined, typically averaged $21 – $23 per hour.

30. On May 10, 2023, Mr. Koki decided to call a staff meeting ("the meeting").

31. The meeting was announced to all staff members on a group text through WhatsApp[1] by Kelsey Shultz, a manager.

32. The text message states, "We are having a MANDATORY ALL STAFF MEETING." (See **Exhibit 1**.)

33. The meeting was originally scheduled for May 15, 2023, at 9:30pm, but was later rescheduled to May 18, 2023, at 9:30pm. (See **Exhibit 2**.)

34. The meeting was held on May 18, 2023, and lasted until approximately 11pm.

35. The following day, Mr. Kasper politely and privately notified Mr. Koki that he was required to pay the staff for the time spent at the meeting since it was mandatory.

36. Mr. Koki told Mr. Kasper he was absolutely not going to pay the staff for attending the meeting.

37. The following day, Mr. Kasper again notified Mr. Koki that he was required to pay staff members who attended the meeting because it was a mandatory meeting.

38. Another manager, Ena, was present during when this conversation occurred.

39. Shockingly, Mr. Koki stated, **"It doesn't matter if it's illegal. I don't really care."**

40. Mr. Koki attempted to justify his refusal to pay the staff for the hour-and-a-half meeting because he "couldn't afford" to pay everyone and some employees were not attentive.

41. On May 31, 2023, Mr. Kasper again confronted Mr. Koki about his refusal to pay the staff for the mandatory meeting.

42. Two other managers, Ena and Andy, were present when Plaintiff made this complaint.

---

[1] WhatsApp is an app used for messaging. Yamada used WhatsApp as a group chat for managers and other staff members to communicate upcoming meetings, shift changes, and overall updates.

43. Mr. Kasper began the meeting with Mr. Koki by citing the <u>exact federal statute</u> Yamada was violating.

44. Mr. Kasper continued and notified Mr. Koki that <u>he would be reporting his refusal to pay for the mandatory meeting to the Department of Labor for wage theft.</u>

45. Upon hearing this, Mr. Koki became visibly upset, raised his voice at Mr. Kasper, and dared him to report the violation.

46. After Mr. Kasper confirmed he was going to make the report, Mr. Koki ended the meeting and told Mr. Kasper that he would not be scheduled anymore, effectively terminating him.

47. When Plaintiff received his final paycheck, it appeared Defendant had included the 1.5 hours Mr. Koki had previously refused to pay Plaintiff, presumably because Plaintiff had notified Mr. Koki he was reporting Defendant for wage theft.

## VI. CAUSES OF ACTION

**COUNT I**
**Violation of Fair Labor Standards Act, 29 U.S.C. § 203 et seq.,**
**Failure to Pay for Mandatory Meeting**

48. Plaintiff re-alleges and incorporates by reference paragraphs 1-47 as if fully set forth herein.

49. By virtue of the acts described above, Defendant knowingly refused to pay Mr. Kasper his entitled minimum rate for the mandatory meeting on May 18, 2023.

50. Under the FLSA, meetings can only be not counted as working time if all of the following four conditions are met: (1) attendance is outside the employee's regular working hours; (2) attendance is voluntary; (3) the meeting is not directly related to the employee's job; and (4) the employee does not perform any productive work during such attendance. 29 CFR § 785.27.

51. Attendance is not voluntary if it is required by the employer. 29 CFR § 785.28.

52. Plaintiff and other employees at Yamada were required to attend what Defendant characterized as a "MANDATORY MEETING."

53. The meeting was not outside Mr. Kasper's regular working hours, his presence at the meeting was not voluntary, and the meeting was directly related to Mr. Kasper's job.

54. Attendance to the meeting was required by Yamada.

55. Since Mr. Kasper's presence at the meeting was mandatory, Mr. Kasper is entitled to the minimum wage rate for the time he was required to attend the meeting.

56. Plaintiff notifed Defendant's agent, Mr. Koki, on three separate occasions that failure to pay Plaintiff and other employees for attending the mandatory meeting was against the law.

57. Mr. Koki is the owner of Yamada and other supervisors were present during some of these conversations, as well.

58. By making the internal complaint, Plaintiff was protected from retaliation under the FLSA.

59. Despite this protection, Defendant terminated Plaintiff expressly because he refused to be silent about Defendant's refusal to pay employees to attend the mandatory meeting.

60. While Defendant ultimately included the 1.5 hours in Plaintiff's final paycheck, it did so only after it had terminated him for engaging in protected activity.

61. As a result, Plaintiff has suffered lost wages due to being prevented from working for Defendant.

62. Under § 216(a) of the FLSA, "Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both."

63. Moreover, under § 216(b) of the FLSA, Defendant is liable to Mr. Kasper for double the amount of his lost wages and an equal amount in liquidated damages.

64. Under § 216(b) of the FLSA, Defendant is also liable to pay the attorney fees and costs Mr. Kasper incurs pursuing a remedy in this matter.

## COUNT II
### Violation of Virginia's Whistleblower Statute, Va. Code § 40.1-27.3

65. Plaintiff re-alleges and incorporates by reference paragraphs 1-64 as if fully set forth herein.

66. By virtue of the acts described above, Defendant retaliated against Mr. Kasper in violation of Va. Code § 40.1-27.3 when Defendant terminated Plaintiff's employment because he complained about the aforementioned violations of state and federal law.

67. Mr. Kasper reported the violations to Mr. Koki multiple times in good faith.

68. Under Va. Code § 40.1-27.3(C), Mr. Kasper is entitled to reinstatement and compensation for wages and benefits he lost following his unlawful termination, along with pre-judgment interest of 6%, attorney fees, and costs.

## COUNT III
### Bowman Claim – Virginia Common Law

69. Plaintiff re-alleges and incorporates by reference paragraphs 1-68 as if fully set forth herein.

70. By virtue of the acts described above, Defendant retaliated against Mr. Kasper as a direct result of the complaints he made concerning Defendant's violations of state minimum wage laws.

71. Mr. Kasper is entitled to both compensatory and punitive damages under his Bowman Claim because Defendant's actions of terminating Mr. Kasper for reporting violations of Virginia wage laws are "willful, malicious, oppressive, wanton, or reckless."

72. Mr. Kasper is therefore entitled to all lost wages he incurs until he in reinstated and up to $350,000 in punitive damages.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Mr. Kasper prays that judgment be entered in his favor and against Defendant as follows:

a. That this Court declare Defendant violated the FLSA and VMWA;

b. That Plaintiff be reinstated to his position as a server at Yamada;

c. That Defendant pay Plaintiff all wages lost between the date of his unlawful termination and his reinstatement, plus an equal amount in liquidated damages;

d. That Defendant pay punitive damages of $100,000 pursuant to Bowman v. State Bank of Keysville, 229 Va. 534 (1985) and the common law of the Commonwealth of Virginia;

e. That Plaintiff be awarded all reasonable attorney fees and costs, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 203 et seq., Va. Code Ann. § 40.1-28.12, and Va. Code Ann. § 40.1-27.3.

f. That Plaintiff be awarded post-judgment interest; and

g. That the Court award such other and further relief as is just, equitable, and proper.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

August 30, 2023

                                        Ryouga Kasper

                                        By: /s/ Christopher E. Collins
                                            Christopher E. Collins

                                            *Counsel for Plaintiff*

Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)
**YUGO COLLINS, PLLC**
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
chris@yugocollins.com
mia@yugocollins.com

*Counsel for Plaintiff*